UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| CARLOS V., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1743-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff Carlos V. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 10, 11. Plaintiff also filed a reply brief. *See* ECF No. 12. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 10) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 11) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for SSI on March 8, 2018, alleging disability beginning March 1, 2018 (the disability onset date), due to "(1) numbness in left side of body; (2) HIV positive; (3) hypertension; (4) depression; and (5) anxiety." Transcript ("Tr.") 18, 188-93, 205. Plaintiff's claim was denied initially on June 4, 2018, after which he requested an

administrative hearing. Tr. 18. On November 4, 2019, Administrative Law Judge Brian LeCours (the "ALJ") conducted a hearing in Buffalo, New York. *Id*. Plaintiff appeared and testified with the assistance of a Spanish language interpreter, and was represented by Brianna Carroll, an attorney. *Id*. Margaret E. Heck, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on December 10, 2019, finding that Plaintiff was not disabled. Tr. 18-27. On October 6, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-5. The ALJ's December 10, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168

F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and

made the following findings in his December 10, 2019 decision:

1.  The claimant has not engaged in substantial gainful activity since March 8, 2018, the application date (20 CFR 416.971 *et seq*.).

2.  The claimant has the following severe impairments: asymptomatic human immunodeficiency virus (HIV), depressive disorder, anxiety disorder, seizure disorder, and residual of remote stroke (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.967(b),[1] except the claimant can never climb ladders, ropes or scaffolds, except for one to two steps of a stepladder. Additionally, the claimant can perform unskilled tasks, including work requiring little or no judgment to do simple duties that can be learned on the job in a short period of time. Furthermore, the claimant can do work involving simple work-related decisions with few workplace changes.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on May 30, 1973 and was 44 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since March 8, 2018, the date the application was filed (20 CFR 416.920(g)).

Tr. 18-26.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits protectively filed on March 8, 2018, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 27.

## ANALYSIS

Plaintiff asserts a single point of error, arguing that the ALJ improperly evaluated the supportability and consistency of the prior administrative findings of state agency medical consultant Gary Ehlert, M.D. ("Dr. Ehlert").[2] *See* ECF No. 10-1 at 1, 8-10. Specifically, Plaintiff argues that the ALJ should not have found Dr. Ehlert's opinion persuasive because later evidence not reviewed by Dr. Ehlert "conflict[ed] with the summary given by Dr. Ehlert." *See id*. at 8. Plaintiff further argues that "concerning Plaintiff's use of his left side, relying on a non-treating, non-examining source over Plaintiff's treating neurologist['s] findings was wholly improper." *See id*. at 9.

The Commissioner argues in response that the ALJ properly evaluated the opinion evidence, and substantial evidence, including the prior administrative findings of Dr. Ehlert, supports the ALJ's RFC finding that Plaintiff could perform light work with the limitations assessed by the ALJ. *See* ECF No. 11-1 at 9-15. Furthermore, argues the Commissioner, Dr.

---

[2] Because Plaintiff does not appear to challenge the ALJ's mental RFC finding (*see generally* ECF No. 10-1), the Court declines to address such in this opinion. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal); *see also Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Ehlert's assessment was not stale because subsequent evidence did not show any significant or meaningful deterioration in Plaintiff's condition. *See id*. at 15-17.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ adequately considered the evidence in the record, including the opinion of Dr. Ehlert and Plaintiff's treatment records, and the ALJ's RFC determination was supported by substantial evidence. With respect to Plaintiff's argument that Dr. Ehlert's assessment of Plaintiff's complaints of left-side weakness conflicts with subsequent evidence, the Court finds no evidence of any significant difference between the evidence Dr. Ehlert considered and Plaintiff's later functioning. Accordingly, the Court finds no error.

Plaintiff was treated from July 2017 to April 2018 at Erie County Medical Center ("ECMC") for Suboxone management; anxiety disorder; chronic pain due to a cardiovascular accident ("CVA") with residual hemiparesis; and seizure disorder due to CVA. Tr. 492-519. On April 28, 2018, Plaintiff was taken to the Emergency Department ("ED") at ECMC via ambulance due to altered mental state ("AMS"). Tr. 582-86. He had a history of similar admissions in the past. Tr. 583. Plaintiff's mother reported that Plaintiff had not been compliant with taking Keppra (a seizure control medication) and other medications, except Suboxone. *Id*. A neurology consult indicated that Plaintiff likely suffered a "breakthrough seizure" due to his noncompliance with

6

Keppra. *Id*. A CT scan of the head found no acute intracranial abnormality. Tr. 587. Plaintiff was discharged home on May 1, 2018. Tr. 582-83.

The record reflects that Plaintiff received the majority of his care at Evergreen Health Services, including primary care and mental health care. Tr. 520-574, 589-633. On April 11, 2018, Plaintiff was seen by Alyssa Shon, M.D. ("Dr. Shon") for HIV follow-up. Tr. 534-37. Plaintiff reported he was taking his medication as prescribed, and his viral load was undetectable. Tr. 534. He also complained of "left[-]sided spasms and shaking." *Id*. Plaintiff reported having a stroke in the past which affected his left side, and even though he regained function, he had been having spasms. *Id*. Dr. Shon diagnosed HIV with 100% medication adherence; opioid dependence; other seizures; and personal history of transient ischemic attack with cerebral infarction. Tr. 537.

On May 31, 2018, Dr. Elhert assessed the medical record and opined that Plaintiff was limited to light exertional work, with no limitations in the ability to perform postural activities, other than never climbing ladders, ropes or scaffolds and had no manipulative or environmental limitations, other than having to avoid all exposure to hazards. Tr. 78-80. Dr. Ehlert further found that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk approximately six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. Tr. 78. He also found that Plaintiff had an unlimited ability to push and/or pull other than the limitations he noted for lifting and carrying. Tr. 78.

On July 30, 2018, Plaintiff had an initial assessment with neurologist Robert Glover, M.D. ("Dr. Glover"), at ECMC, for seizures, TIA and weakness to the left side of torso. Tr. 635. Plaintiff also reported "learning barriers such as cognitive/verbal" and "difficulty remembering." *Id*. Plaintiff reported having had no recent seizures and being compliant with his medications. *Id*. Dr. Glover reviewed Plaintiff's diagnostic studies from April 2018 and noted that his head CT showed

"no acute abnormalities," and his EEG showed "generalized slowing consistent with mild cerebral dysfunction." *Id*. On examination, Plaintiff had intact shoulder shrug on confrontation; full range of motion of the bilateral upper and lower extremities; normal muscle bulk and tone throughout; and 5/5 strength in all major muscle groups. Tr. 437.

Treatment notes from Dr. Shon in August 2018 similarly showed stable musculoskeletal findings, including a normal gait and station, no tenderness of the spine, and normal inspection and range of motion of the upper and lower extremities. Tr. 615.

In December 2018, Plaintiff had a follow-up visit with Dr. Glover. Tr. 639-42. He continued to complain of left sided tremor and weakness, with the left upper extremity tremor more prominent than the lower. Tr. 639. However, Plaintiff reported that the tremors could be suppressed if he paid attention. *Id*. Physical examination showed no upper or lower extremity drift, 4/5 strength in the left upper and lower extremities, 5/5 strength in the right upper and lower extremities, and intact sensation to light tough. Tr. 641. Plaintiff's gait was "stooped over" and antalgic "with obvious weakness of the left foot with some left foot dragging." *Id*. Despite Plaintiff's report of a history of stroke due to drug use, Dr. Glover noted there was no clear objective documentation or imaging evidence to suggest that Plaintiff had a stroke. *Id*. However, he also observed that "[Plaintiff] had toxoplasmosis in 2002 with a ring enhancing right frontal lesion, which is the likely explanation for his left[-]sided symptoms. *Id*. Dr. Glover offered Plaintiff a medication trial for the tremors, but he declined, stating that his functioning was not severely affected because he was right-handed. *Id*. He was continued on Keppra for his seizures. *Id*.

Plaintiff was treated at Buffalo General Hospital on February 12, 2019, following an unwitnessed cardiac arrest. Tr. 592. He was transported to the ED by EMS, intubated for

hyperkinetic respiratory failure, and ultimately transferred to the ICU for community acquired pneumonia. *Id*. He was discharged on February 16, 2019. Thereafter, on March 2, 2019, Plaintiff had a "transitional care office visit" with Dr. Shon. Tr. 594-97. Plaintiff had only been taking Keppra once a day because "he did not know that he had to take it twice a day." Tr. 594. Plaintiff continued to be assessed with hemiplegia and hemiparesis following cerebral infarction affecting left non-dominant side, and Dr. Shon assessed Plaintiff with "limitation of activities due to disability" and provided counseling on treatment plan adherence. Tr. 596.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective

evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed his application on March 8, 2018, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she

considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

12

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's RFC finding. Tr. 18-22.  *See* 20 C.F.R. §§ 404.1527, 416.927. First, the ALJ properly relied upon the prior administrative findings of Dr. Ehlert, who assessed that Plaintiff would be able to perform light exertional work, with no limitations in the ability to perform postural activities, other than never climbing ladders, ropes or scaffolds. Tr. 25, 78. Dr. Ehlert assessed no manipulative or environmental limitations, other than having to avoid all exposure to hazards. Tr. 79. The ALJ found Dr. Ehlert's opinion persuasive because it was generally consistent with the overall medical evidence or record. Tr. 25.

In support of his findings, Dr. Ehlert cited specific portions of the record to justify his assessment. Tr. 22; 20 C.F.R. § 416.927c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). For example, in support of his prior administrative finding, Dr. Ehlert cited to treatment records from April 11, 2018, which noted, *inter alia*, that, although Plaintiff reported muscle pain, spasms, and trouble walking, on examination, he appeared healthy, and experienced no acute distress; he walked with a normal gait and station; had intact strength, no tenderness of the spine; and all of his systems were within normal limits and normal on inspection; he was also neurologically intact. Tr. 80, 536. Thus, the ALJ properly concluded that Dr. Ehlert's prior administrative finding was supported. Tr. 22; 20 C.F.R. § 416.927c(c)(1).

Furthermore, state agency consultants, such as Dr. Ehlert, are highly qualified and experts in Social Security disability evaluation. *See* 20 C.F.R. § 416.913a(b)(1). The opinions of state

agency consultants, where consistent with the evidence of record, can constitute substantial evidence in support of the ALJ's decision. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995); *Schisler v. Sullivan*, 3 F.3d 563 (2d Cir. 1993); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012). Here, the assessment of Dr. Ehlert, that Plaintiff would be able to perform light exertional work with no limitations in his ability to perform postural activities, other than never climbing ladders, ropes or scaffolds, supports the ALJ's RFC finding that Plaintiff could perform light work, except that he could never climb ladders, ropes or scaffolds, except for one to two steps of a stepladder. Tr. 22. Moreover, Dr. Ehlert's opinion is based on a detailed review of the evidence, and he provided explanations for the conclusions reached. Tr. 77-80; *see* 20 C.F.R. § 416.920c(c)(1)-(2) (supportability and consistency factors).

As the ALJ found, Dr. Ehlert's report was also generally consistent with the overall medical evidence of record, including Plaintiff's treatment notes. 20 C.F.R. § 416.1520c(c)(2). For example, although medical records indicated that Plaintiff reported numbness of the upper and lower left extremities, as well as muscle pain and tremors, physical assessments in July 2018 indicated that Plaintiff retained intact shoulder shrug on confrontation, full range of motion of the bilateral upper and lower extremities, normal muscle bulk and tone throughout, and full strength in all major muscle groups. Tr. 24, 613, 637. Plaintiff also had intact resting tremor of the left upper and lower extremity, antalgic gait with left limp, a negative Romberg test, and no evidence of dysmetria. *Id*. Similarly, August 2018 treatment notes continued to show stable musculoskeletal findings, including a normal gait and station, no tenderness of the spine, and normal inspection and range of motion of the upper and lower extremities. Tr. 24, 615.

While Plaintiff continued to complain of left-sided tremor and weakness in December 2018, as noted above, he also reported that when he paid attention, the tremors could be suppressed. Tr. 24, 639. On examination, Plaintiff showed no upper or lower extremity drift, 4/5 strength in the left upper and lower extremities, full strength in the right upper and lower extremities, and intact sensation to light touch. Tr. 24, 641. As the ALJ noted, although Plaintiff was offered a medication trial for the tremors, he declined, stating that his functioning was not severely affected because he was right-handed. Tr. 24, 641. Based on the foregoing, the ALJ reasonably concluded that Dr. Ehlert's prior administrative finding was consistent with other evidence in the record. Tr. 22; 20 C.F.R. § § 416.1520c(c)(2). Thus, the ALJ properly considered the two most important factors—supportability and consistency—in finding Dr. Ehlert's opinion persuasive. 20 C.F.R. § 416.920c(b)(2).

Next, Plaintiff argues that the ALJ should not have found Dr. Ehlert's May 2018 opinion persuasive because subsequent evidence conflicted with Dr. Ehlert's findings. *See* ECF No. 10-1 at 8. Plaintiff also contends that the ALJ improperly relied on a non-treating, non-examining source over the findings of Plaintiff's treating neurologist. *See id*. at 9. However, as explained above, the source of an opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency, and, as the Court has previously explained, the ALJ properly considered these factors in his assessment of Dr. Ehlert's opinion. *Id*. Plaintiff specifically calls out Dr. Glover's December 2018 opinion that the likely explanation for Plaintiff's left-sided symptoms was related to a right frontal lesion from having toxoplasmosis in 2002. *See id*. at 8-9 (citing Tr. 641). According to Plaintiff, "for Dr. Elhert's opinion to be supported—he needed to review that evidence."

A medical opinion may be stale if it does not account for a plaintiff's deteriorating condition. *See Carney v. Berryhill*, No. 16-CV-269, 2017 WL 2021529, at *6 (W.D.N.Y. May 12, 2017). "However, a medical opinion is not necessarily stale simply based on its age." *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018). Overall, remand is warranted where more recent evidence in the record "directly contradict[s] the older reports of [claimant's] functioning on which the ALJ relied" and the ALJ failed to analyze the more recent evidence. *Blash v. Comm'r of Soc. Sec. Admin.*, 813 F. App'x 642 (2d Cir. 2020). But, where the submitted evidence did not directly contradict a doctor's opined limitations, and the ALJ analyzed the recent evidence, the doctor's opinion was not impermissibly stale. Such is the case here. Dr. Glover's records do not show any significant difference between what Dr. Ehlert considered and Plaintiff's later functioning.

As noted above, Plaintiff began treatment with Dr. Glover for his left-sided issues in July and 2018 (Tr. 635) and had a follow-up visit in December 2018 (Tr. 639). Plaintiff incorrectly argues that Dr. Ehlert "completely ignored that Plaintiff also had left sided spasms . . . ." *See* ECF No. 10-1 at 8. However, a review of Dr. Ehlert's findings indicates that he specifically considered Plaintiff's complaints of left-sided spasms and noted that Plaintiff had a stroke in the past but had regained function in his left side. Tr. 80. Additionally, it is clear from a review of the ALJ's decision that he considered subsequent treatment records, including Dr. Glover's July and December 2018 treatment notes (Tr. 635, 638) and Dr. Shon's August 2018 treatment notes (Tr. 613, 615). Tr. 24.

Plaintiff's arguments amount to nothing more than an invitation for the Court to reevaluate the evidence in a manner more favorable to him. This argument is insufficient under the substantial evidence standard of review. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013)

("whether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports the ALJ's decision."). Accordingly, Plaintiff's argument fails. Additionally, Plaintiff has not shown that he needs a more restrictive RFC finding than the one assessed by the ALJ, as was his burden. *See Poupore*, 566 F.3d at 305-06 (burden on Plaintiff to show that he cannot perform the RFC as found by the ALJ).

Based on the foregoing, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, including the treatment reports and the medical opinions, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE